CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL -1 2015

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KENNETH VALENTINE AWE,<br>   Plaintiff, | ) ) ) | Civil Action No. 7:14-cv-00665 |
| v. | ) ) | **MEMORANDUM OPINION** |
| BENNY MULLINS, et al.,<br>   Defendants. | ) ) ) | By:   Hon. Jackson L. Kiser<br>       Senior United States District Judge |

Kenneth Valentine Awe, a Virginia prisoner proceeding pro se, filed a verified complaint pursuant to 42 U.S.C. § 1983, naming Dr. Benny Mullins and nurses Rebel Deel and Vicki Phipps of the Red Onion State Prison ("ROSP") as defendants. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition.[1] After reviewing the record, I grant Defendants' motion for summary judgment.

I.

Plaintiff claims that he is afflicted with "known/documented" chronic arthritis in his knees, "severe degenerative disc disease," chronic "herniations," disc protrusion and bulging, compression of nerve root, end plate "spurring," deformed vertebrae, and imbalance. Consequently, Plaintiff says he is unable to do all the movements for ROSP's special housing security procedures to access out-of-cell activities, like exercise, showers, attorney and family visitation, and classification hearings, due to Defendants' alleged failure to treat his ailments that resulted in "unbearable" pain.

---

[1] Plaintiff filed argument without evidence in response to Defendants' motion for summary judgment. Consequently, I must rely on the verified complaint to refute the evidence in support of the motion for summary judgment. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (noting a verified complaint "is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge").

In response, Defendants submit the following evidence. Dr. Mullins is a licensed medical doctor and has been providing medical services to inmates at ROSP since approximately April 2014. Before Dr. Mullins rendered care at ROSP, Plaintiff received X rays of both hips in March 2013 that showed Plaintiff suffered from degenerative arthritis in both hips. The treatment for this condition is through medication unless or until the condition deteriorates enough that surgery is warranted. Plaintiff has received medication for this condition.

On May 13, 2014, Dr. Mullins ordered a one-year bottom bunk and lower tier assignment for Plaintiff, and Dr. Mullins ordered a six-month lower tier assignment for Plaintiff on August 5, 2014.[2] On April 17, 2015, Dr. Mullins learned of Plaintiff's desire for a renewed lower tier assignment and again approved the request.

Dr. Mullins also learned of Plaintiff's desire for a no-kneel pass on April 17, 2015. According to Plaintiff's medical record, a physician had examined Plaintiff on October 7, 2014, and denied the request for a no-kneel pass because Plaintiff had a functional range of motion in his extremities, no deformity or swelling, and a normal gait. In order for Dr. Mullins to determine whether Plaintiff qualifies for a no-kneel pass, he would have to examine Plaintiff because a no-kneel pass significantly affects security at ROSP.[3]

Plaintiff did not complain to Dr. Mullins about issues related to his hips knees or back and had not requested a no-kneel pass during their last appointment on November 18, 2014. Dr. Mullins explains that Plaintiff may submit a sick call request if Plaintiff feels that his condition has deteriorated or that he has a medical need. Dr. Mullins denies ever refusing to treat Plaintiff.

---

[2] Dr. Mullins' understanding of prison policy is that a lower tier order are for only six month increments and that an inmate a inmate needs only to submit a request for renewal to have that order renewed.

[3] However, based upon Plaintiff's medical record alone, Dr. Mullins doubts that Plaintiff qualifies for a no-kneel pass.

2

Nurse Phipps, as ROSP's head nurse, is responsible for both administrative and clinical tasks. After reviewing the administrative log of sick call requests, Nurse Phipps avers that Plaintiff has not filed a sick call requests since December 2014 and explains that Plaintiff may, like other inmates and per policy, submit a sick call request if he has a medical need to request a no-kneel pass or to see a physician. ROSP nurses may not issue a no-kneel pass until it is authorized by a physician.

Nurse Phipps notes that Plaintiff had an order for a lower tier from August 5, 2014, through February 5, 2015. In order for that order to be renewed, Plaintiff simply needed to submit such a request, but Plaintiff did not do so. Upon reviewing ROSP's electronic records system, Nurse Phipps discovered that security staff had housed Plaintiff in an upper tier cell although Dr. Mullins' lower tier order was in effect through February 5, 2015. Because Dr. Mullins' lower tier order was in the electronic records system, Nurse Phipps does not know why Plaintiff was housed in an upper tier cell, and she denies having had any contemporaneous knowledge of the problem. As medical personnel, Defendants do not control or have authority over the housing of inmates. Instead, the medical department can issue medical orders regarding the medical needs for bottom bunks and lower tiers, but ROSP security staff determines whether or how those orders may be implemented. When brought to his attention on April 17, 2015, Dr. Mullins renewed a lower tier order on the same day.

Nurse Deel denies having had any direct involvement with Plaintiff concerning the claims raised in this action or contemporaneous knowledge of Plaintiff's housing assignment on an upper tier. She denies receiving any sick call request from Plaintiff about a lower tier housing assignment, a no-kneel pass, or a medical condition during the relevant time.

Defendants conclude that Plaintiff has not been denied access to medical treatment and aver that he has had a bottom tier assignment since February 2015. Although Plaintiff is familiar with the procedures to request medical treatment and had used those procedures in the past, Plaintiff had not submitted related requests for medical treatment.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

## III.

Defendants are entitled to summary judgment because Plaintiff fails to establish their deliberate indifference to a serious medical need. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment claim, Plaintiff must show that a defendant was personally aware of facts indicating a substantial risk of serious harm and actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52. A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851. However, claims of negligence are not cognizable in a § 1983 proceeding. Estelle, 429 U.S. at 105-06; see Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam).

Plaintiff cannot succeed by merely resting on his accusation in the complaint that Defendants "fail[] to provide [him] with needed medical care services" in light of the evidence supporting Defendants' motion for summary judgment. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (recognizing a plaintiff's basis for relief

"requires more than labels and conclusions"). When Dr. Mullins saw Plaintiff on November 18, 2014, about medication management, Plaintiff neither complained of issues related to his hips, knees, or back nor requested a no-kneel pass. Dr. Mullins was never presented with Plaintiff's desire for a no-kneel pass until April 17, 2015, and was not involved in the other physician's prior denial of the request. There is no evidence to indicate that Defendants were aware security staff had assigned Plaintiff to an upper tier despite Dr. Mullins' order for a bottom tier, and in any event, security staff's placement of Plaintiff on an upper tier is a matter beyond Defendants' control. There is no evidence that Defendants were deliberately indifferent to a serious medical need, and they cannot be held liable for the acts or omissions of security staff, who were responsible for executing medical orders for lower-tier cell assignments. No medical officer in Defendants' positions would know that their acts or omissions under these circumstances violated clearly established constitutional rights. Accordingly, Defendants are entitled to qualified immunity and summary judgment.

## IV.

For the foregoing reasons, I grant Defendants' motion for summary judgment, and I rescind Plaintiff's leave to proceed in forma pauperis because it is clear from the record that Plaintiff has "three strikes" and is not under imminent danger of serious physical harm, pursuant to 28 U.S.C. § 1915(g). See ECF No. 5 (telling Plaintiff that such leave would be rescinded if it was determined that Plaintiff had "three strikes").

ENTER: This 1st day of July, 2015.

*Jackson L. Kiser*
Senior United States District Judge